STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

**FILED**
**April 20, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **M.S. and B.S.**

**No. 20-0772** (Braxton County 19-JA-81 and 19-JA-82)

## MEMORANDUM DECISION

Petitioner Mother L.L., by counsel Bernard R. Mauser, appeals the Circuit Court of Braxton County's August 28, 2020, order terminating her parental and custodial rights to M.S. and B.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Katherine A. Campbell, filed a response in support of the circuit court's order. The guardian ad litem, Julia R. Callaghan, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating her parental and custodial rights upon finding that she was unable to correct the conditions of abuse and neglect and without considering less-restrictive dispositional alternatives.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In December of 2019, the DHHR filed an abuse and neglect petition alleging that petitioner was previously involved in two separate abuse and neglect proceedings related to her permitting her stepfather to have access to the children. According to the petition, petitioner's stepfather sexually abused petitioner when she was a teenager. Petitioner acknowledged during the first abuse and neglect proceeding in 2015 that M.S. needed to be supervised if left with her stepfather and that she would examine the child for signs of sexual abuse after being in the stepfather's care. Although she was adjudicated of neglect in that case, she later successfully completed an improvement period, and the matter against her was dismissed. However, later that year petitioner was adjudicated of neglect a second time in regard to both children based on her continued

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

exposure of the children to her stepfather. Petitioner again successfully completed an improvement period, and the children were returned to her custody. According to the DHHR, the conduct giving rise to the current matter involved petitioner and the children residing with the stepfather. Additionally, B.S. was observed to have been left alone with petitioner's stepfather for approximately two hours. Further, petitioner was in a relationship with R.M., an individual whose parental and custodial rights to his own children were terminated in a separate abuse and neglect proceeding. The petition also alleged that petitioner was involved in an altercation with B.S.'s father when she was exchanging the child with the father for a visit following a family court hearing shortly before the petition was filed. According to the petition, which quoted from an order of the family court, petitioner, her stepfather, and her boyfriend "began antagonizing [the father] . . . including yelling . . . and displaying obscene gestures." The family court further found that petitioner's stepfather attempted to remove the father from his vehicle on more than one occasion, struck the vehicle numerous times, and refused to move from in front of the vehicle. Further, petitioner's boyfriend removed his shirt and attempted to engage in a physical altercation. B.S was in her father's car during this incident while M.S. was left unattended in another car and was later observed to be "screaming and crying and visibly upset" from having witnessed the individuals' conduct. When Child Protective Services ("CPS") initiated an investigation into these circumstances, petitioner refused to permit the worker into the home. Following the petition's filing, the circuit court ordered petitioner to undergo a psychological evaluation. The court further ordered petitioner to participate in parenting and adult life skills classes, obtain full-time employment, and obtain fit and suitable housing for the children.

In July of 2020, the circuit court entered an order adjudicating petitioner on the basis that she continued to expose the children to her stepfather despite two prior abuse and neglect proceedings in which she was adjudicated for this conduct and expressly prohibited from doing so in the future. According to the circuit court, petitioner

> acknowledged that she understood from her two prior cases that she was not to have her children in the presence of [her stepfather], but she ignored those prior orders and rulings of the [c]ourt, and admitted that she was living with [her stepfather], as well as [her boyfriend], who has lost his rights to his own children.

In fact, petitioner testified at the adjudicatory hearing that she would expose her children to the stepfather again in the future if necessary. Accordingly, the court found that petitioner's conduct constituted abuse and neglect because "she has failed to protect her children for the third time, by having them reside with her step-father . . . who sexually abused her as a child, and by having them reside with [her boyfriend], who has lost the rights to his own children." In addition to her failure to provide the children with a fit and suitable home, the circuit court found that petitioner demonstrated no insight to her conduct and, in fact, recanted her allegation that her stepfather sexually abused her as a teen. The court found, however, that her recantation was "in direct contradiction to the findings of this [c]ourt in her two prior abuse and neglect cases." Accordingly, the court adjudicated petitioner as an abusing and neglecting parent.

In August of 2020, the circuit court held a dispositional hearing, during which a CPS worker, the psychologist who evaluated petitioner, and petitioner testified. According to the psychologist's report, petitioner "rationalized why she and her children were safe in [the

stepfather's] home after making statements in previous cases acknowledging that they were not." The report also indicated that petitioner acknowledged that her mother was no longer living in the home and could not act as a safety resource to monitor the stepfather's access to the children. Importantly, when the psychologist asked if she believed that she did anything that was either abusive or neglectful, petitioner responded, "No. [The children] had food, clothing, they had what they needed." Petitioner also stated during her evaluation that she was "a good mom" because the children were clean, their needs were met, and she did not physically abuse them. When the evaluator asked what, if anything, petitioner anticipated doing differently as a result of the proceedings, petitioner was unequivocal that her "parenting would not change." Because petitioner refused to accept responsibility for her conduct, the psychologist concluded that petitioner would not change her behavior, leading to a prognosis for improved parenting of extremely poor.

Based on the evidence, the court found that petitioner "has no ability to gain insight as to her behavior" and "sees herself fit as a mother and has no appreciation of the conduct for which she was adjudicated." Because of her lack of insight, the circuit court found that petitioner saw no reason to modify her behavior. The court therefore denied petitioner's request for an improvement period. The court further found that, other than a brief period where she was employed, petitioner "made no effort to gain any kind of employment" and also that she "could not articulate any stable long-term plan to obtain and maintain proper housing . . . as is necessary for the welfare of her children." Accordingly, the court found that petitioner failed to comply with the reasonable family case plan and, upon finding that the children's best interests required it, terminated her parental and custodial rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to terminate her parental and custodial rights upon finding that she failed to provide the children with a fit and suitable home because that failure

---

[2]The parental and custodial rights of the father of M.S. were also terminated below, and the permanency plan for that child is adoption. The father of B.S. is nonabusing, and the child has achieved permanency by remaining in his custody.

was due primarily to her lack of financial means, which she contends is precluded by West Virginia Code § 49-1-201. We find, however, that contrary to petitioner's argument, the circuit court's finding concerning petitioner's inability to provide the children with a fit and suitable home was directly tied to her refusal to acknowledge her abusive and neglectful conduct below, not her alleged lack of financial means. As such, it is unnecessary to address petitioner's specific arguments on appeal because the resolution of this matter turns entirely upon petitioner's failure to acknowledge the conditions of abuse and neglect at issue.

As this Court has routinely held,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted). Here, the record overwhelmingly supports the circuit court's findings regarding petitioner's failure to acknowledge the conditions at issue. As her psychological evaluation made abundantly clear, petitioner believed she had done nothing to warrant her adjudication in this matter, despite having previously been adjudicated for this same conduct on two occasions. Even more importantly for purposes of this appeal, petitioner was clear with her evaluator that she intended to change nothing about her parenting moving forward, thereby demonstrating that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Indeed, even on appeal to this Court, petitioner continues to minimize her conduct below by asserting that "[i]t must be emphasized that no evidence was ever presented or offered . . . that the . . . children ever suffered from any actual harm, or were neglected, to the extent that they lacked adequate food, clothing, or shelter." In making this argument, petitioner continues to minimize her conduct and its harmful effect on the children. It is further disingenuous for petitioner to assert that the children were somehow not harmed or neglected simply because their general needs were met when petitioner continued to expose them to an individual who sexually abused her as a child and who caused her such concern that she previously admitted to examining M.S. for signs of sexual abuse after the child was in the stepfather's care.

While petitioner argues that she testified at disposition that she would not allow either her stepfather or her boyfriend to be involved in her life, she ignores the fact that, historically, she allowed the stepfather access to the children after both of her prior abuse and neglect proceedings and that she indicated during the current proceedings that she would live with him again if necessary. In short, this is a credibility determination that the circuit court resolved against petitioner, and we decline to disturb this finding on appeal. *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

Petitioner further argues that the circuit court should have considered a less-restrictive dispositional alternative, such as an improvement period. However, her argument is again

predicated on the erroneous assertion that termination of her rights was based primarily on her lack of financial means, when, in actuality, termination was predicated on her total refusal to admit any wrongdoing. Indeed, the circuit court cannot be said to have erred in denying petitioner an improvement period to correct conditions of abuse and neglect that she refused to acknowledge existed. While petitioner argues that she established that she was likely to fully participate in an improvement period, as required to obtain one under West Virginia Code § 49-4-610, she nevertheless ignores the fact that her failure to acknowledge the abuse and neglect at issue resulted in an improvement period being an exercise in futility. As we have explained, a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). As outlined above, petitioner was unequivocal during the proceedings that she had done nothing wrong and would not alter her parenting behavior moving forward. As such, petitioner left the circuit court no choice but to deny her request for an improvement period, given that she could not establish that she was likely to fully comply with the terms and conditions thereof.

This same evidence also supports the circuit court's termination of petitioner's parental and custodial rights. Again, petitioner's refusal to acknowledge the conditions of abuse and neglect resulted in those conditions being untreatable, which fully supports the circuit court's finding that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. West Virginia Code § 49-4-604(d) defines "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" as meaning "that, based upon the evidence before the court, the abusing adult or adults have demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Given petitioner's inability to correct the conditions of abuse and neglect due to her refusal to acknowledge them, it is clear that the circuit court did not err in making this finding. Additionally, the court found that the children's welfare required termination of petitioner's rights, given her failure to acknowledge, or otherwise accept responsibility for, her conduct. Under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental and custodial rights upon these findings. On appeal, petitioner argues that the children's welfare did not require termination, but this argument ignores the fact that petitioner repeatedly subjected the children to her stepfather after two prior abuse and neglect proceedings and clearly stated that she would not change her parenting in the future. There can be no stronger evidence that termination is necessary than an individual who repeatedly subjects children to the same conditions of abuse and neglect and expresses an intention to do so again in the future if the parent deems it necessary. Further, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its August 28, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: April 20, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton